

**Bell Law Group, PLLC**
116 Jackson Avenue
Syosset, New York 11791
T (516) 280-3008
F (516) 706-4692
BellLG.com

August 1, 2023

**Via ECF**
The Honorable Pamela K. Chen, U.S.D.J.
United States District Court
225 Cadman Plaza East
Brooklyn New York 11201

   Re: Lopez v. Frank's Painting of LI, LLC et al.,
      Docket No : 2:22-cv-04541-PKC-JMW

Dear Judge Chen:

  We represent Plaintiff Sergio Lopez ("Mr. Lopez") in this employment matter against Defendants Frank's Painting of LI, LLC and Franco Olivario (collectively, "Defendants"). With the consent of defense counsel, Plaintiff now respectfully seeks court approval of the parties' settlement, which provides for a total payment of $55,000 to Plaintiff (inclusive of attorneys' fees), in accordance with Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015). The parties' finalized settlement agreement is submitted herein as Exhibit A.

Procedural History

  Plaintiff brought this action against Defendants on August 2, 2022, alleging wage and hour violations pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), amongst other claims. (Dkt. 1). Defendants submitted an answer, denying all allegations. The parties engaged in informal paper discovery.

  On March 21, 2023, the parties participated in a mediation session with the mediator Joseph DiBenedetto of JDB Mediation, LLC, and, with his assistance, reached a settlement in principle. Thereafter, the parties negotiated the terms of a full written agreement, which is now finalized and submitted here as Exhibit A.

  **I.**  **Claims and Defenses**

  Plaintiff Lopez was hired by Defendant as a non-managerial and non-exempt painter and laborer in 2010, and worked in that role until December 2021. Plaintiff Lopez further states that he regularly worked over 40 hours per week, typically around 56 hours per week, throughout his employment. In fact, Plaintiff regularly worked from 8 a.m. to 5 p.m. seven days per week, except in January and February of each year, when weekend work was less frequent.

Despite these hours, Plaintiff was paid a flat daily rate regardless of how many hours he worked and did not receive overtime for all hours worked over 40 per week. To the best of Plaintiff's recollection, his daily rate was $125.00 per day from 2014 through 2019, $160.00 per day from 2019 through 2020, and $170.00 per day in 2021. Significantly, Plaintiff was not paid the mandatory statutory rate of time-and-one-half for the overtimes hours he worked each week.

Defendants also failed to provide Plaintiff with an accurate statement or notice of his full wages, hours worked, regular rate of pay, overtime rate of pay, or other information required by NYLL § 195. When Plaintiff complained about Defendants' pay practices, rather than correct the unlawful practices, Defendants retaliated by threatening to have Plaintiff, who is Guatemalan, deported.

In sum, Plaintiff Lopez alleged damages in the sum of $100,000.00, which is comprised of damages for failure to pay overtime wages in the sum of $44,894.00; liquidated damages in the sum of $44,894.00; and damages for NYWTPA violations in the sum of $10,000.00.

### *Defendants' Position*

Defendants denied Plaintiff's claims and asserted multiple defenses. *First,* Defendants produced wage and hour records, as well as text messages between the Parties, that they asserted show that Plaintiff did not work the days and hours he claims to have worked. *Second,* Defendants claimed that there is no viable FLSA collective action or Rule 23 class on these facts. *Third,* Defendants asserted that Plaintiff was provided with a Wage Acknowledgment Form. Finally, Defendants vehemently deny that they retaliated against Plaintiff.

## II. Settlement Terms

The $55,000 settlement ("Settlement Sum") will be distributed as follows:

- Plaintiff Lopez: $35,905.33

- Bell Law Group, PLLC: $19,094.67, representing litigation costs in the sum of $1,142.00 and fees in the sum of $17,952.67, equaling one-third of the Settlement Sum after costs. (See Exhibit B annexed hereto, showing costs and fees)

## III. The Settlement is Fair and Reasonable under the Cheeks Factors

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. Cheeks, 796 F.3d at 206-07. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." Kochilas v. Nat'l Merch. Servs., Inc., 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." Id. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." Id. (citation omitted).

The Honorable Pamela K. Chen, U.S.D.J.
August 1, 2023
Page 3 of 4

In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). The Wolinsky factors consider: (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. Here, all of the factors support approving the parties' settlement. Id.

*First,* the total settlement amount of $55,000 is reasonable in light of Plaintiff's potential range of recovery at trial. If Plaintiff was successful in proving his hours and pay as alleged in the Complaint, he is claiming $100,000 in owed wages under the FLSA and NYLL, inclusive of liquidated damages. However, if Defendants were successful in asserting that Plaintiff did *not* work the number of work hours he claimed, then Plaintiff's recovery would be considerably less. Indeed, Defendants continue to assert that Plaintiff is entitled to little or *no recovery* whatsoever. Thus, a realistic range of recovery for Plaintiff's FLSA claims was between zero and $100,00.00.

Under this proposed settlement, after deducting for attorneys' fees and costs, Plaintiff will receive a combined total of $35,905.33 which is 35.9% of his maximum recovery. The outcome here is, therefore, a highly reasonable one under the FLSA. See, e.g., Gervacio v. ARJ Laundry Servs. Inc., 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (finding twenty percent of maximum recovery reasonable in light of circumstances); Villanueva v. 179 Third Avenue Rest Inc., 2018 WL 4100479, at *2 (S.D.N.Y. Aug. 28, 2018) (finding "less than six percent of estimated maximum recovery" to be reasonable in light of the circumstances).

*Second,* this settlement agreement will enable the parties to avoid the anticipated burdens of continuing with protracted litigation. Through settlement, Plaintiff will avoid the stress of contentious litigation and the loss of income associated with taking days off from work in order to attend a deposition and trial. Plaintiff will also avoid the stress, uncertainty, and delay that would be inherent in completing discovery and engaging in motion practice. Indeed, courts have recognized that discovery, continued litigation, and eventual trial practice may "meaningfully decrease possible recovery for Plaintiff[s]." Flores v. Mama Lombardi's of Holbrook, Inc., 2015 WL 2374515, at *5 (E.D.N.Y. May 18, 2015).

*Third,* from Plaintiff's perspective, the prompt payment of the settlement amount is far preferable to continued litigation. As noted above, there are significant factual disputes in the case, particularly around the credibility of each party's position. In contrast through settlement, both parties have control over their recovery and financial exposure and avoid accruing additional attorneys' fees for an uncertain result. Plaintiff is interested in a settlement that eliminates the uncertainty of trial, expedites his receipt of funds, and provides closure.

As to the fourth and fifth Cheeks factors, the settlement is clearly the result of arm's length negotiation by zealous advocates. Significantly, the parties were assisted in reaching the settlement by a neutral mediator, Joseph DiBenedetto of JDB Mediation, LLC. The assistance of an experienced employment law mediator reinforces that a settlement agreement is non-collusive. See, e.g., Hernandez v. Anjost Corp., 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("A settlement like this one, reached with the help of a third-party neutral, enjoys a "presumption that

the settlement achieved meets the requirements of due process."); Capsolas v. Pasta Res. Inc., 2012 WL 1656920, at *1 (S.D.N.Y. May 9, 2012) (same). There was no fraud or collusion here.

### IV.  The Non-Monetary Terms are Reasonable

The parties' settlement does not include the types of provisions discussed in Cheeks that contravene FLSA's remedial purposes. Snead v. Interim Healthcare of Rochester, Inc., 286 F. Supp. 3d 546, 553 (W.D.N.Y. 2018). Plaintiff's release of claims is narrowly tailored. Further, the parties' non-disparagement clause is also mutual and makes clear that truthful statements about the nature of the case, the settlement of the case, and the parties' experiences in litigating their claims and defenses, do not constitute disparagement. These provisions reflect compromises made among the parties and are within the guardrails of fairness set out in Cheeks.

### V.  Plaintiff's Attorneys' Fees are Reasonable

An award of attorneys' fees is also subject to review under Cheeks and must be reasonable. Rainboth-Venditti v. Nat'l Retail Sols, Inc., No. 6:16-CV-137 (ATB), 2018 U.S. Dist. LEXIS 19130, at *2 (N.D.N.Y. Feb. 6, 2018). The Second Circuit courts refer to the Goldberger factors when assessing the reasonableness of attorneys' fees: (1) the time and labor expended by counsel;(2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000).

Here, under the settlement agreement, Plaintiff's counsel would receive a fee award of $17,952.67, equaling one-third of the Settlement Sum, and costs in the sum of $1,142.00. This amount is consistent with approved fee awards in this Circuit, thereby demonstrating its reasonableness. See Fresno County Employees' Retirement Assoc. v. Isaacson/Weaver Family Trust, 925 F.3d 63, 71 (2d Cir. 2019) (quoting McDaniel v. Cty. of Schenectady, 595 F.3d 411, 419 (2d Cir. 2010)) ("[W]e have previously noted that 'the percentage method has the advantage of aligning the interests of Plaintiff and their attorneys more fully'"); see also Kornell v. Haverhill Ret. Sys., 790 Fed. App'x 296, 298 (2d Cir. 2019) (approving attorneys' fees award of one-third the gross settlement sum – not  one-third the net settlement sum after deduction of attorneys' fees – and finding that trial court decision to grant same was permissible as long as "its award of attorneys' fees is reasonable."); Petersonv. Lab. Corp. of Am. Holdings, No. 1:20-cv-1056 (MAD/TWD), 2021 U.S. Dist. LEXIS 241010, at *8 (N.D.N.Y. Dec. 17, 2021) (holding 33 1/3% in attorney's fees are reasonable on Cheeks review); Li v. Ichiban Mei Rong Li, Inc., No. 1:16-CV-0863 (DEP), 2017 U.S. Dist. LEXIS 68060, at *4 (N.D.N.Y. May 4, 2017) (holding on Cheeks review that an attorneys' fee award equal to one-third of the total settlement amount minus costs is reasonable); Calle v. Elite Specialty Coatings Plus, Inc., 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); Thornhill v. CVS Pharmacy, Inc., 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases setting attorneys' fees at one-third of the settlement).

Moreover, the reasonableness of Plaintiff's counsel's requested fee is further solidified by "[a]pplying the lodestar method as a cross check." See Fresno County Employees' Retirement Assoc., 925 F.3d at 72 (citing Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000)). In order to calculate the lodestar check, the firm multiplied the attorney and paralegal hours

spent on the case by each individual's reasonable hourly rate. See Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007).

Here, over the course of the litigation, four attorneys worked on the case – two associates (Thomas Moyher and Frank Tantone) and two partners (Paul Bartel and Chaya Gourarie), who billed for approximately 75 hours in total. See Ex. B. The associates billed at the rate of $350.00 per hour and the two partners billed at the rate of $450.00 per hour. These hourly rates are deemed reasonable in this District. See, e.g., Campos, et al. v. BKUK 3 Corp., No. 18 Civ. 4036, 2021 U.S. Dist. LEXIS 151528, 2021 WL 3540243, at *11 (S.D.N.Y. Aug. 10, 2021) ("Courts in this District have determined in recent cases that a fee in the range of $250 to $450 is appropriate for experienced litigators in wage-and-hour cases.") (collecting cases). See also Leon v. Gazivoda Realty Co., 2019 U.S. Dist. LEXIS 160059, at *6 (S.D.N.Y. Sep. 16, 2019) (approving the rate of $400.00 per hour for the undersigned when she was a senior litigation associate in 2019).

Additionally, two paralegals worked in this case, and billed at the rate of $150.00 per hour, which courts have deemed to be reasonable. See e.g., Long v. HSBC USA Inc., 14 Civ. 6233, 2016 U.S. Dist. LEXIS 124199, 2016 WL 4764939, at *11 (S.D.N.Y. Sept. 13, 2016) ("As to the fees for paralegal work, in recent FLSA actions, hourly rates between $100 and $150 for paralegal work have been found to be reasonable.").

In sum, based on the above time and hourly rates, Plaintiff's counsel's lodestar is $25,932.50. (Exhibit B). Accordingly, attorneys' fees of $17,952.67 are within the range of attorneys' fees that courts in this Circuit have deemed reasonable. See e.g., Johnson v. Brennan, No. 10 Civ. 4712, 2011 WL 4357376, at *20 (S.D.N.Y. Sept. 16, 2011) ("Courts regularly award lodestar multipliers from two to six times lodestar.").

For the reasons stated above, Plaintiff respectfully requests that the Court approve the settlement agreement in this case. We thank the Court for its attention to this matter.

Respectfully submitted,

_____
Chaya M. Gourarie